**ADENA, INC. and David M. Long Jr., M.D., PH.D., and Donna Rae Long and Carolyn Rae Long,**

v.

**Clifford B. COHN, Esquire and Cohn & Associates and Philippe Malecki.**

**No. CIV. A. 00–3041.**

United States District Court, E.D. Pennsylvania.

March 30, 2001.

---

Lloyd George Parry, Davis, Riter, Parry & Hartmann, Philadelphia, PA, for Plaintiffs.

Clifford B. Cohn, Philadelphia, PA, Pro se.

Jeffrey B. Albert, Mc Kissock & Hoffman, Philadelphia, PA, for Defendants.

Philippe Malecki, Cap De Corse, France, Pro se.

## MEMORANDUM AND ORDER

KELLY, District Judge.

Presently before the Court is the Motion by Defendants Clifford B. Cohn, Esquire

and Cohn & Associates ("the Cohn Defendants"): (1) to Dismiss the Complaint of the Plaintiffs, Adena, Inc. ("Adena") and David, Donna and Carolyn Long ("the Longs") pursuant to Federal Rule of Civil Procedure 12(b)(6); (2) in the alternative, for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c); and (3) in the alternative, for a Stay Pending Arbitration before the Fee Disputes Committee of the Philadelphia Bar Association.[1] On June 15, 2000, the Plaintiffs filed suit in federal court, alleging various violations of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962(b)(c)(d), breach of fiduciary duty, malpractice and civil conspiracy.[2] On September 7, 2000, the Cohn Defendants filed the present motion. For the following reasons, the motion is denied.

## I. BACKGROUND

Accepting as true the facts alleged in the Plaintiffs' Complaint and all reasonable inferences that can be drawn therefrom, the facts of the case are as follows. Sometime after his marriage to Plaintiff Carolyn Long, Defendant Philippe Malecki ("Malecki") proposed the idea of funding the establishment of a Hermes store in the Philadelphia area to his in-laws, Plaintiffs David and Donna Long. They agreed and underwrote the establishment of Adena, the corporation that would own and control the store. From Adena's inception until December 3, 1998, Malecki owned 660 of the 1000 shares, and the Longs owned the remaining 340 shares. In addition to being Adena's majority shareholder, Malecki also acted as Adena's sole director, president, secretary and treasurer.

From May 1997 to May 1998, Malecki drew fourteen checks on Adena's account to pay for office rent and for his separate satellite dish decal business, which he owned and operated for his own personal pecuniary gain. Malecki claimed that these checks were for secretarial services for Adena. In 1997 Malecki drew another check on Adena's account to pay for a mass mailing conducted on behalf of his business. This check was justified as Adena postage expenses. Similarly, Malecki issued six more checks for mass mailings, this time claiming that they were for sales promotions for Adena. From June 1997 to May 1998, Malecki also made eight wire transmissions from Adena's credit accounts to pay for patent applications on behalf of his business.

In addition, Malecki used Adena's store facilities and personnel to further his satellite dish decal business. On approximately six occasions in 1997 and 1998, Malecki used cash proceeds from Adena, totaling $600, to pay delivery bills on behalf of his personal business. In September of 1997, Malecki wrote a check on Adena's account payable in the amount of $10,000 to an Adena employee who deposited the check in her personal account and periodically withdrew the money, giving the cash to Malecki; Malecki represented to auditors that this money had been repaid to Adena. Malecki exceeded his agreed upon salary by $29,102.70 in 1998. Malecki used Adena's credit accounts to make personal expenditures unrelated to Adena totaling $33,842.35 in 1996, $56,921.90 in 1997 and

---

1. The Cohn Defendants' motion is more appropriately reviewed as a motion to dismiss for failure to state a claim rather than a motion for summary judgment. The arguments offered by the Cohn Defendants primarily appear to challenge the legal sufficiency of the claims asserted by the Plaintiffs and do not rely on an evaluation of independent evidence.

2. The Plaintiffs also allege conversion against Defendant Philippe Malecki.

$23,560.37 in 1998. He at no time disclosed that they were unrelated to the corporation. During those three years, Malecki used the United States Mail to make payments relating to those expenditures.

In 1997, Malecki initiated divorce proceedings against Carolyn Long. He engaged the services of an attorney to represent him in the matter and used Adena's assets to pay the attorney. Also in 1997, the United States Immigration and Naturalization Service initiated deportation services against Malecki, a citizen of France. He hired another attorney to represent him in that matter and issued six checks, drawn on Adena's account and deposited in the United States Mail, to pay that attorney. Malecki recorded the checks as being for legal and accounting fees.

In September of 1997, Malecki entered into an agreement with the Cohn Defendants whereby the law firm would represent both Malecki and Adena. Consent to such joint representation was neither sought from, nor given by, the minority shareholders. In addition, at no time were the terms of the joint representation or the billing arrangement disclosed to the minority shareholders. The Cohn Defendants performed legal services for the personal benefit of Malecki, including representing him in his deportation proceedings, his divorce and the transfer of Malecki's Adena stock to Plaintiffs David and Donna Long. The Cohn Defendants billed, and received payment from, Adena for these services.

In August of 1997, David and Donna Long made repeated demands on Malecki and the Cohn Defendants for access to Adena's books and financial records. These demands were denied. David and Donna Long filed a Verified Complaint in Equity in the Court of Common Pleas of Montgomery County, Pennsylvania seeking access to the financial records. From that time until December 3, 1998, the Cohn Defendants purported to represent Adena in that action. The equity action was eventually discontinued on December 22, 1998, as a result of Malecki's transferring his controlling shares to Plaintiffs David and Donna Long and resigning from his corporate offices on December 3rd. That was the first time that the minority shareholders obtained partial books and records of Adena.

In 1998, Malecki drew three checks on Adena's account, totaling over $27,000, and deposited them in the United States Mail, payable to the Cohn Defendants. Also in 1998, the Cohn Defendants billed Adena on five separate occasions, through the United States Mail, for legal services rendered to the corporation. These checks and bills, while purporting to be for the legal representation of the firm, were for services rendered personally to Malecki.

In the fall of 1998, Hermes stopped delivery to Adena for Malecki's failure to pay $201,965.17. The Cohn Defendants and Malecki negotiated with the minority shareholders to have them pay that money to Hermes. In exchange for that payment and for a loan to Adena totaling almost $152,000, the Cohn Defendants and Malecki agreed to transfer Malecki's Adena stock to David and Donna Long. The Cohn Defendants and Malecki prepared the Stock Transfer Agreement and attached various financial documents setting forth the financial condition of Adena, which they warranted to be complete and accurate. Those documents, however, concealed or omitted more than $220,000 in expenditures from Adena's accounts which were for Malecki's personal or business use.

On December 16, 1998, the Cohn Defendants deposited a letter in the United States Mail to David Long requesting pay-

ment of $27,249 for professional services rendered to Adena. Adena requested the Cohn Defendants specify what fees were properly chargeable to Adena. Associates and Cohn refused to comply with the request. Cohn swore under oath, however, that Adena owed the full amount to his firm.

Deloitte and Touche, at the direction of Adena's new counsel, conducted an internal corporate investigation. Malecki threatened an Adena employee with arrest and criminal prosecution if she complied with the investigation. During the course of the investigation, Malecki's previously discussed activities were discovered.

The Plaintiffs sued Malecki and the Cohn Defendants, claiming RICO violations, breach of fiduciary duty and civil conspiracy. In addition, they sued the Cohn Defendants for malpractice and Malecki for conversion.

In this Motion to Dismiss and, in the alternative, for Summary Judgment or Stay pending arbitration, the Cohn Defendants contend that: (1) the 1997 Settlement Agreement between Malecki and the Longs released all claims against Cohn; (2) the corporate claims concerning fees are properly before the Fee Disputes Committee of the Philadelphia Bar Association and may not be pursued in United States District Court; (3) the individual Plaintiffs' claims are barred due to their lack of standing; (4) an attorney is not liable for aiding and abetting a corporate officer's breach of fiduciary duty merely by the provision of advice to the corporation absent direct and knowing participation in the breach itself; and (5) Plaintiffs' three RICO claims do not establish actionable conduct by Cohn.

3. While the Stock Transfer Agreement refers to the Malecki family, their exact involvement

## II. STANDARD OF REVIEW

In considering whether to dismiss a complaint for failing to state a claim upon which relief can be granted, the court may consider those facts alleged in the complaint as well as matters of public record, orders, facts in the record and exhibits attached to the complaint. *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1391 (3d Cir.1994). In addition, the Third Circuit has held that a court may properly consider an "undisputably authentic document" upon which the complaint is based that is attached to a motion to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993). The court must accept those facts as true. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Moreover, the complaint is viewed in the light most favorable to the plaintiff. *Tunnell v. Wiley,* 514 F.2d 971, 975 n. 6 (3d Cir.1975). In addition to these expansive parameters, the threshold a plaintiff must meet to satisfy pleading requirements is exceedingly low; a court may dismiss a complaint only if the plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## III. DISCUSSION

### A. The Release Provision

First, the Cohn Defendants argue that the release provision contained in the 1997 Stock Transfer Agreement, entered into by the Malecki family and the Long family, released the Cohn Defendants from all claims against them.[3] Although the express language of the release

is unclear.

provision suggests that the Longs did release Malecki's "respective ... attorneys" from liability, they did so "except with respect to the terms and conditions of [that] agreement." Many of the Plaintiffs' allegations against Malecki and the Cohn Defendants relate directly to misrepresentations and omissions contained in the Settlement Agreement and, therefore, are outside the scope of protection provided by the release. Furthermore, the Plaintiffs allege that they were induced to sign the Stock Transfer Agreement in reliance on those misrepresentations and omissions that were warranted by the Defendants. A release will not be found valid if "executed and procured by fraud, duress, accident or mutual mistake." *Three Rivers Motors Co. v. Ford Motor Co.*, 522 F.2d 885, 892 (3d Cir.1975).[4] Therefore, the release provision did not release the Cohn Defendants from the present claims against them because of both the limited scope of the release and its questionable validity in light of the Plaintiff's allegations of misrepresentations.

### B. *The Fee Agreement*

■■■ Second, the Cohn Defendants argue that they undertook representation of Adena and Malecki pursuant to a fee agreement and, therefore, any disputes thereunder should be submitted to arbitration before the Fee Disputes Committee of the Philadelphia Bar Association. The Court cannot agree, however, with the Cohn Defendants' contention that the present controversy involves nothing more than a dispute over legal fees. "[T]he power and authority of arbitrators are wholly dependent upon the terms of the agreement of submission, and they cannot exercise authority as to matters not includ-

ed therein...." *Sley Sys. Garages v. Transport Workers Union*, 406 Pa. 370, 178 A.2d 560, 561 (1962). While the agreement does state that "[a]ny dispute regarding the fee in this matter" is subject to arbitration, it does not specify whether any other types of disputes, such as those involving claims of RICO violations, breach of fiduciary duty, malpractice, and civil conspiracy, must similarly be resolved through arbitration. This notable absence indicates that the parties did not intend that any and all disputes arising out of Cohn's representation be settled by arbitration. The arbitration provision applies only to standard fee disputes and not to the types of more complicated claims that the Plaintiffs are currently asserting against the Cohn Defendants. Therefore, the Cohn Defendents' request for a Stay Pending Arbitration is denied.

### C. *Aiding and Abetting a Breach of Fiduciary Duty*

■■■ Third, the Cohn Defendants argue that an attorney is not liable for aiding and abetting a corporate officer's breach of fiduciary duty absent direct and knowing participation in the breach itself. The Pennsylvania Supreme Court has yet to rule on whether it would recognize a claim of aiding and abetting a breach of fiduciary duty; however, the United States District Court for the Eastern District of Pennsylvania has entertained such a claim on at least three occasions. *See e.g., Schuylkill Skyport Inn, Inc. v. Rich*, No. CIV.A. 95–3128, 1996 WL 502280, at *38 (E.D.Pa. Aug.21, 1996). To establish a claim of aiding and abetting a breach of fiduciary duty, a plaintiff must show: (1) a breach of fiduciary duty owed to another; (2) knowledge of the breach by the aider

---

**4.** Because the Cohn Defendants' argument that the Longs are barred from asserting claims against them fails, there is no need to address the issue of whether Adena, being completely controlled by the Longs, is similarly barred.

or abettor; and (3) substantial assistance or encouragement by the aider or abettor in effecting that breach. *SDK Investments, Inc. v. Ott*, No. CIV.A. 94–1111, 1996 WL 69402, at *12 (E.D.Pa. Feb.15, 1996). The court in *Schuylkill Skyport Inn* did not require the direct and knowing participation that the Defendants contend is required. Rather, the court allowed the claim to proceed based upon a showing of "substantial assistance or encouragement." Moreover, even if such a heightened involvement were required, the Plaintiffs sufficiently alleged that the Cohn Defendants were indeed knowing and active participants in Malecki's breach. Accordingly, Plaintiffs have sufficiently alleged a claim of aiding and abetting a breach of fiduciary duty against the Cohn Defendants.

### D. *Standing*

■ Fourth, the Cohn Defendants argue that the individual Plaintiffs, as shareholders, have no standing to sue for damage to Adena resulting from the alleged breach of fiduciary duty or the alleged RICO violation. As discussed above, a claim of aiding and abetting a breach of fiduciary duty is cognizable. Malecki, as the majority shareholder, owed a fiduciary duty to the minority shareholders, the individual Plaintiffs. *Shanno v. Magee Indus. Enters., Inc.*, 856 F.2d 562, 565 (3d Cir.1988) (citing *Weisbecker v. Hosiery Patents, Inc.*, 356 Pa. 244, 51 A.2d 811, 813–14 (1947)). Therefore, a claim of aiding and abetting a breach of fiduciary duty can be made out against the Cohn Defendants by virtue of their alleged involvement in Malecki's breach. As for the alleged RICO violations, Plaintiffs claim that they made payments and loans to acquire

Malecki's shares of Adena, and that they were induced to do so in reliance on a Stock Transfer Agreement prepared by Malecki and the Cohn Defendants as part of the on-going RICO conspiracy. The individual Plaintiffs allege that they have suffered personal financial losses separate from the losses incurred by Adena and, therefore, they have standing to pursue their claims against the Cohn Defendants.

### E. *RICO Claims*

■ Finally, the Cohn Defendants argue that the mere failure to segregate bills for services rendered to Adena and to Malecki does not constitute a RICO violation. The extensive allegations set forth in the Complaint, however, go beyond merely claiming faulty billing practices on the part of Cohn and, therefore, sufficiently state a claim for RICO violations.

■ To establish "a pattern of racketeering" as required by § 1962(b) and (c), a plaintiff must show that the defendant committed at least two predicate acts enumerated in § 1961(1) over a ten year period and "that the racketeering predicates are related, and that they amount to or pose a threat of continuous criminal activity." *Lubart v. Riley and Fanelli, P.C.*, No. CIV. A. 97–6392, 1998 WL 398253, at *2 (E.D.Pa. June 22, 1998) (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)). In the present matter, the Plaintiffs allege that the Cohn Defendants engaged in repeated acts of mail fraud.[5] The elements of mail fraud include "(1) a scheme to defraud; and (2) the use of the mails ... for the purpose of executing the scheme." *Id.* (quoting *Schuylkill Skyport Inn*, 1996 WL 502280, at *14). The first

---

**5.** While the Plaintiffs broadly allege in their Complaint that Malecki and the Cohn Defendants engaged in a pattern of racketeering involving mail fraud, wire fraud and money laundering, the Complaint contains only factual averments of mail fraud on the part of the Cohn Defendants.

element requires that the act "involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive ordinary persons of ordinary prudence and comprehension." *Id.* at *3 (quoting *Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1415 (3d Cir.1991)). The Plaintiffs met this requirement by alleging that Cohn repeatedly billed, and accepted payment from, Adena for legal services purported to have been rendered on behalf of the corporation but which were actually rendered exclusively to Malecki and were unrelated, and often in opposition to, to the interests of Adena. To satisfy the second element of mail fraud, the use of the mail communications must be "incident to an essential part of the scheme." *Id.* (quoting *Schmuck v. United States*, 489 U.S. 705, 710–11, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989)). The Plaintiffs in the present matter sufficiently alleged that Cohn used the United States Mail to seek and receive payment from Adena for services rendered to Malecki personally.

In addition, the requisite two predicate acts must be related and continuous. *See id.* The element of relatedness "will nearly always be satisfied" if the plaintiff alleges at least two acts of mail fraud or wire fraud "stemming from the same fraudulent transaction...." *Id.* at *4 (quoting *Kehr Packages*, 926 F.2d at 1414). The element of continuity can be established "by proving a series of related predicates extending over a substantial period of time," or, in the alternative, the "threat of future racketeering activity." *Id.* (quoting *H.J., Inc.*, 492 U.S. at 242, 109 S.Ct. 2893). In this case, the Plaintiffs satisfied both elements by alleging that the Defendants engaged in multiple acts of mail fraud in connection with the billing of Adena and that those multiple acts continued for over a year.

The Cohn Defendants also argue that the Plaintiffs have not alleged the manner in which Cohn used the proceeds he acquired through racketeering activities as, according to the Defendants, is required under § 1962(b). The Cohn Defendants fail to cite any cases in support of this proposition, and the plain language of the statute does not require that there be a "use" of the proceeds. Similarly, the Defendants' assertion that Malecki's knowledge of the services rendered to the corporation is imputed to Adena is without merit. A corporation is permitted to bring various causes of action against its officers and directors. Furthermore, Malecki is also being sued for his involvement in the alleged racketeering activity.

In their Complaint, the Plaintiffs allege facts sufficient to state their claims of RICO violations, breach of fiduciary duty, civil conspiracy and malpractice against the Cohn Defendants. In light of these allegations, the Court cannot say that the Plaintiffs have set forth no facts under which relief may be granted. Therefore, the Cohn Defendants' motion to dismiss and, in the alternative for summary judgment is denied. Because the claims are outside the scope of the fee agreement, the Cohn Defendants' motion for a stay is also denied.